OPINION
{¶ 1} Appellant, T.J.W., appeals an adjudication of delinquency in the Butler County Court of Common Pleas, Juvenile Division, for the offense of aggravated assault. We modify the decision of the juvenile court and remand.
 {¶ 2} This case is the result of an incident on the night of July 16, 2006 where Otis Atwood broke the windows out of appellant's vehicle, appellant then drove the vehicle up a dead-end street, turned around, and struck Atwood with the vehicle while driving back down the street. *Page 2 
 {¶ 3} That evening, appellant was with several friends at a party on the west side of Hamilton. Around midnight, appellant and three of his friends decided to leave the party. Appellant was 16 years old at the time and had only been driving one or two months. Appellant was unfamiliar with the area and asked the driver of another car who was also leaving the party if he could follow. The vehicles turned onto Highland Place from Cereal Avenue and came to a stop.
 {¶ 4} According to appellant, Otis Atwood, the resident of 203 Cereal Avenue, began yelling racial slurs toward appellant and his passengers. Specifically, Atwood yelled "get these n*****s out of my block." Atwood ran from his porch toward appellant's vehicle with a baseball bat, striking the windows with the bat. Atwood first shattered the rear window, then the passenger windows, causing the passenger in the front seat to move toward the center of the vehicle and block the gear shift. Appellant testified that he was scared, eventually put the car in gear, and drove up Highland to get away from the onslaught. However, Highland was a dead-end street, requiring appellant to turn the vehicle around and drive back down the street. Appellant testified that Atwood was standing in the street with the bat, he swerved to his right "as much as [he] could to get out of the way," and unintentionally struck Atwood with the vehicle. Atwood was knocked to the side of the road between two parked cars.
 {¶ 5} Following the incident, appellant immediately called his parents and told them to call the police. Appellant and his parents met with a Hamilton police officer to report the incident. No charges were filed against appellant by the city; however, Atwood filed an individual criminal complaint resulting in the instant action.
 {¶ 6} According to Atwood, that evening he was sitting on his porch and had consumed a six-pack of beer. He observed two cars turn from Cereal Avenue onto Highland Place. He claims that he heard a girl scream from the direction of Highland Place and he walked towards the direction of the scream. He testified that he saw appellant and others *Page 3 
from both cars attempting to drag a girl named "Jessica" that lived in his neighborhood into the car. According to Atwood, he "asked them what was going on" and a black male punched him. Atwood testified that he went back to his house to "tell them to call the police."[1] He retrieved a baseball bat and went back to Highland where he proceeded to bust out the rear window of appellant's car.[2] Atwood stated, "I went [back] to protect myself too. I had the right when I was assaulted. I had the right to go back and protect myself."
 {¶ 7} Atwood testified that appellant then drove up to the dead-end, turned around, and drove towards Atwood. Atwood stated that he was standing towards the side of the road, appellant knocked him out of his shoes, and he landed between two parked cars; injuring his spleen, neck and back.
 {¶ 8} Angela Hatfield, Atwood's neighbor, also testified about the incident. Hatfield resides at 201 Cereal Avenue. Hatfield testified that she observed appellant's car drive from the alley, swerve and hit a car that was parked in the street. She stated that she did not see Atwood standing in the street or get hit by the vehicle. After appellant's vehicle drove away, Hatfield walked to where the incident occurred and found Atwood unconscious on the pavement between two parked vehicles.
 {¶ 9} Detective Daniel Stevenson of the Hamilton Police Department also testified at trial. Det. Stevenson testified that he was assigned to investigate the complaint filed by Atwood. According to the detective, Atwood stated that on the night in question he got into an argument with some people in a motor vehicle, he hit the vehicle multiple times with a baseball bat, breaking out the windows. The car then tried to leave, but upon reaching the dead-end, turned around, and hit him. Det. Stevenson stated Atwood never mentioned that *Page 4 
he was trying to defend "Jessica" from being accosted and "I never got a good explanation out of any of them about why this transpired."
 {¶ 10} A bench trial was held in the Butler County Juvenile Court. The juvenile court made a finding of delinquency against appellant for committing aggravated assault in violation of R.C. 2903.12, a felony of the fourth degree.
 {¶ 11} Appellant timely appeals, raising three assignments of error. We will first address appellant's second assignment of error.
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "THE EVIDENCE WAS INSUFFICIENT TO JUSTIFY A FINDING OF DELINQUENCY BASED UPON A VIOLATION OF AGGRAVATED ASSAULT."
 {¶ 14} Appellant argues in his first assignment of error that insufficient evidence was presented to support the trial court's finding of delinquency based upon a violation of aggravated assault.
 {¶ 15} In reviewing the sufficiency of the evidence to support a criminal conviction, the reviewing court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355. In considering the sufficiency of the evidence, a reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. See, also, State v. White, Franklin App. No. 06AP-607, 2007-Ohio-3217, ¶ 26. *Page 5 
 {¶ 16} R.C. 2903.12 defines the crime of "aggravated assault," in pertinent part, as "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly: Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 17} In the oral decision following trial, the juvenile court stated, "Well as much as we want to argue about Mr. Atwood, how dislikeable he may have been maybe, I don't know anything about him other than what I've heard described here. My guess he's a drunk, and sees some blacks. I'll give him every benefit of the doubt here, but that's not the key testimony in this case. There's two key witnesses. One key thing he said and the lady [Angela Hatfield], everything is the car. He said he swerved the other way to the right. Mr. Atwood says he swerved to the left, which is where he was found between those cars. The lady said he swerved two to three feet to the left. * * * The bottom line is I've got to find him guilty. He did it. You can dream all you want, but that lady is as independent as you're going to get. * * * He swerved to the left; his body was to the left. He's trying to say . . . he testified he swerved to the right to avoid him. I'm not buying it. Theres [sic] two people. You can discount his if you want, but I don't discount that lady at all."
 {¶ 18} The judge further stated, "And that's the testimony in this case that he went to the left. He's trying to tell me he went to the right. The lady says he went to the left. He says he swerved his car and hit him. It supports [Atwood] . . . more than supports [appellant]. * * * He didn't swerve to the right; he swerved to the left, which is where Mr. Atwood ended up being. That's where he got hit to the side that way. That's the way I call it."
 {¶ 19} Following trial, appellant requested written findings of fact and conclusions of law. The juvenile court's findings and conclusions stated that appellant, "while operating a *Page 6 
motor vehicle, caused physical harm to Ottis [sic] Atwood by deliberately steering said automobile to the left into the body of Ottis [sic] Atwood, using said motor vehicle as a deadly weapon. The Court further finds that the State has proven beyond a reasonable doubt that Ottis [sic] Atwood did strike and break windows in the car driven by [appellant], as it was parked. After the damage, [appellant] drove said automobile up the street away from Ottis [sic] Atwood, turned around and drove the car back towards Ottis [sic] Atwood, veering two to three feet to the left to hit Ottis [sic] Atwood and, further that [appellant] had space in the street driving to the right including space he had just vacated when he drove away from Ottis [sic] Atwood, to avoid contact with Ottis [sic] Atwood."
 {¶ 20} After a review of the record and the juvenile court's findings, the evidence does not support a violation of aggravated assault. The evidence indicates that Otis Atwood attacked appellant's vehicle by breaking the windows. Appellant's initial effort was to avoid the onslaught, as evidenced by appellant driving up Highland Place. However, Highland Place was a dead-end street. When appellant discovered that he could not get away via Highland, he was required to turn around and drive back down Highland.
 {¶ 21} The juvenile court made this same finding. The court stated in its written findings that after Atwood broke appellant's windows, appellant drove up the street away from Atwood. The evidence clearly shows that appellant was attempting to get away.
 {¶ 22} As appellant drove his vehicle back down Highland, Atwood was still standing in the street. Appellant testified that he swerved to avoid Atwood, but inadvertently hit Atwood as he tried drove down Highland. This testimony supports the finding that appellant was attempting to get away.
 {¶ 23} The additional findings of the juvenile court also do not support a violation of aggravated assault. The juvenile court found that appellant committed an intentional act by "deliberately steering" his vehicle into Atwood. The juvenile court made no finding that *Page 7 
appellant was acting under the influence of a sudden passion or in a sudden fit of rage nor did the trial court cite any evidence of provocation. The juvenile court's finding was more akin to a violation of felonious assault, which requires a showing, in pertinent part, that "no person shall knowingly cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." However, appellant faced a charge of aggravated assault, not felonious assault. Aggravated assault is an offense of inferior degree of felonious assault. See State v. Mays (2005), 161 Ohio App.3d 175. Appellant could not be convicted of felonious assault because he was charged with a crime of inferior degree.
 {¶ 24} Further, the juvenile court's specific basis for its finding of delinquency, and that appellant "deliberately" struck Atwood, was its reliance on the testimony of Angela Hatfield. In reviewing the transcript in this case, Hatfield's testimony is consistent with appellant's version of the events that he swerved to avoid Atwood. The juvenile court placed significant weight, and credited Angela Hatfield with the statement, that appellant swerved "to the left." Appellant testified that he swerved to his "right." As evidenced by the oral and written decisions, the juvenile court discredited appellant's version of the events on this supposed contradiction. Upon review of the testimony though, the statements by Angela Hatfield and appellant appear to be consistent. Hatfield was facing north up Highland Place. From her perspective, appellant swerved left, to the west. Appellant was facing the other direction, driving south on Highland Place. From appellant's perspective, swerving to his right is also to the west, and not in contrast to Hatfield's testimony as the juvenile court found.
 {¶ 25} After a review of the record and the findings of the juvenile court, the evidence is insufficient to support a finding of delinquency based on a violation of aggravated assault.
 {¶ 26} However, this does not end our analysis. An appellate court may "modify a verdict where the evidence shows that appellant was not guilty of the crime for which he was convicted, but is guilty of a lesser included offense." State v. Cobb, 153 Ohio App.3d 541, *Page 8 
545, citing R.C. 2953.07 and R.C. 2945.79. Although the evidence does not support a charge of aggravated assault, the evidence is sufficient to support a finding of delinquency for the lesser-included offense of negligent assault under R.C. 2903.14, a misdemeanor of the third degree. Under that statute, a person commits "negligent assault" if he or she "negligently, by means of a deadly weapon or dangerous ordnance * * *, cause[s] physical harm to another or to another's unborn." R.C. 2903.14.
 {¶ 27} Appellant only had his driver's license for one to two months at the time of the incident. Appellant was faced with an individual breaking out the windows of his car. He testified that he was scared and in an unfamiliar area. By all accounts, appellant's initial action was to drive his vehicle up Highland Place to evade the attack by Atwood, but encountered a dead-end. As a result, appellant was forced to turn around, and drive back down Highland. As appellant drove south on Highland, Atwood was standing in the street. Appellant admitted swerving in an attempt to avoid Atwood; however, appellant negligently struck Atwood, knocking him between two parked cars.
 {¶ 28} Based on the foregoing, appellant's second assignment of error is sustained. The finding of delinquency based on a violation of aggravated assault is not supported by sufficient evidence. Rather, the record supports a finding of delinquency based on a violation of negligent assault.
 {¶ 29} Assignment of Error No. 1:
 {¶ 30} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FINDING DELINQUENCY BASED UPON A VIOLATION OF THE CHARGE OF AGGRAVATED ASSAULT PURSUANT TO R.C. 2903.12."
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "APPELLANT'S DELINQUENCY FINDING IS BASED UPON A VIOLATION OF AGGRAVATED ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 9 
 {¶ 33} In his first and third assignments of error, appellant argues that the finding of delinquency was against the manifest weight of the evidence. Appellant contends that the juvenile court erred in not finding he was acting in self-defense when he struck Atwood.
 {¶ 34} Self-defense, as an affirmative defense, does not negate an element of the charge. Instead, the defendant seeks to be relieved from culpability by attempting to justify his actions. State v. Martin
(1986), 21 Ohio St.3d 91, 94. Self-defense is not available to appellant. In this case, appellant did not admit intentionally driving into Otis Atwood to avoid an imminent danger of bodily harm. Rather, appellant testified that he swerved to avoid Atwood and inadvertently struck him. Further, in light of our disposition of appellant's second assignment of error, appellant's first and third assignments of error are overruled.
 {¶ 35} Accordingly, we modify the judgment of the juvenile court and vacate appellant's adjudication and disposition relating to the finding of delinquency based on aggravated assault and enter a finding of delinquency for the offense of negligent assault. We remand this case to the juvenile court for a new dispositional hearing based upon this modification.
WALSH and POWELL, JJ., concur.
[1] Atwood also testified at trial that he did not stay in the house and call the police himself "because I was drinking and because when I get, you know makes me mad when I drink and I go nuts * * *."
[2] Atwood claimed he only smashed the rear window of the vehicle with the bat and the boys hid the car after the incident and smashed out the remaining windows. *Page 1