[Cite as *In re D.O.*, 2020-Ohio-6862.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE:  D.O.                         :        APPEAL NO. C-190691
TRIAL NO. 15-9394X

:        *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  December 23, 2020

*Joseph T. Deters,* Hamilton County Prosecuting Attorney*,* and *Scott M. Heenan,* Assistant Prosecuting Attorney*,* for Appellee the State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, *Andrew Hakala-Finch* and *Julie Kahrs Nessler*, Assistant Public Defenders, for Appellant D.O.

**MYERS, Judge.**

{¶1}    Appellant D.O. appeals from the trial court's judgment adjudicating him delinquent of burglary.   In two assignments of error, D.O. argues that his adjudication was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶2}    For the reasons that follow, we agree with D.O.'s argument that his adjudication for burglary in violation of R.C. 2911.12(A)(2) was not supported by sufficient evidence.   But we further find, and D.O. concedes, that the record supports an adjudication for trespass in a habitation when a person is present or likely to be present in violation of R.C. 2911.12(B).   We therefore reverse the trial court's judgment adjudicating D.O. delinquent of burglary and remand for the trial court to enter judgment adjudicating D.O. delinquent of trespass.

### *Factual Background*

{¶3}    On September 27, 2015, Donald and Irina Borgman returned home after a shopping trip and discovered D.O. hiding underneath a box in their spare bedroom.   The state filed a complaint alleging that D.O. was a delinquent child for committing an act that, if committed by an adult, would have constituted the offense of burglary in violation of R.C. 2911.12(A)(2).

{¶4}    At a trial before a juvenile court magistrate, Donald and Irina Borgman testified that on the day of the offense, after they returned home their dog continued to bark for approximately 45 minutes.   While checking around the house to see what could be causing the dog to bark, Irina found D.O. hiding underneath a large box in a spare bedroom.   D.O. told Irina that he was her friend, but Irina did not recognize

2

him. D.O. further told Irina and Donald that he entered the house through the unlocked front door and tried to turn on the television in the living room while he waited for them to return home. While Donald was familiar with D.O.'s family and had previously hired D.O. and his siblings to help him with various chores around his home, neither Irina nor Donald had given D.O. permission to be in their home on the day of the offense.

{¶5} Nothing was taken from the Borgmans' home. While the Borgmans normally kept the curtains in the spare bedroom closed, Irina noticed that the curtains were open when she found D.O. She also noticed what she described as a "mess" on the bed in the spare bedroom, and that a chair was pushed against the outside of the house underneath the window to that room.

{¶6} Colerain Township Police Officer Brandon Ellis testified that he investigated the burglary at the Borgmans' home and spoke with D.O. at the scene. D.O. told the officer that the Borgmans' unlocked door had opened when he knocked on it, and that he had entered the home to look for Donald. D.O. waited in the living room for the Borgmans to return home, but when he heard someone enter the home, he remained hidden because he was unsure who it was.

{¶7} D.O.'s brother Tony Cook testified that he and his siblings, including D.O., had helped Donald with chores around his yard and inside his house, had watched movies at Donald's home, and had gone to restaurants with Donald. He explained that they had been given permission to be inside the home when Donald was not there to take care of Donald's animals and clean. Cook testified that this occurred from early 2013 until April of 2015.

{¶8}    The magistrate adjudicated D.O. delinquent of burglary.  D.O. filed objections to the magistrate's decision, arguing, as relevant to this appeal, that his adjudication was not supported by sufficient evidence and that the magistrate erred in adjudicating him delinquent of burglary where there was no finding of what criminal offense D.O. intended to commit inside the habitation.

{¶9}    Following a hearing, the trial court issued an entry that overruled D.O.'s objections, adopted the magistrate's decision, and adjudicated D.O. delinquent.  With respect to D.O.'s intent to commit a criminal offense inside the habitation, the trial court stated that:

> The Court is unpersuaded that [D.O.] entered the Borgman home to watch television or otherwise socialize.  Nothing about [D.O.'s] actions support the assertion that he was waiting inside the home for Mr. Borgman to return home.  [D.O.] forcefully entered what he knew to be an occupied dwelling and hid in a box upon the homeowner's return. In the bedroom where [D.O.] was found, the bed and the curtains were not as Mrs. Borgman left them, and a chair had been moved below the bedroom window on the exterior of the home.  [D.O.] remained in hiding for approximately 45 minutes after the Borgmans returned home and did not respond when the Borgmans called out inquiring if anyone else was present in the home.  If [D.O.] believed he was welcome to be in the home at that time, or was merely there to visit, it is unlikely he would have hidden in a box when they arrived home, and remain hidden for 45 minutes.  Rather, it could clearly be inferred from the facts and circumstances that [D.O.] forcefully entered the

home with the intent to commit a crime, was interrupted by the Borgmans returning home, and hid.

Based upon an independent review of the record, the Court finds that the circumstances in this case give rise to an inference that [D.O.] intended to commit a criminal offense inside the habitation.

D.O. now appeals.

### *Sufficiency and Weight of the Evidence*

{¶10} In two assignments of error, D.O. argues that his adjudication for burglary was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶11} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, when considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶12} D.O. was adjudicated delinquent of burglary pursuant to R.C. 2911.12(A)(2), which provides that "[n]o person, by force, stealth, or deception, shall * * * Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary

habitation of any person when any person other than an accomplice of the offender is present or likely to be present, *with purpose to commit in the habitation any criminal offense*." (Emphasis added.)

{¶13} D.O. asserts that the state failed to argue what criminal offense he intended to commit in the habitation and that the evidence was insufficient to establish this element of the offense. He concedes that the evidence presented at trial was sufficient to establish the offense of trespass.

{¶14} In response, the state argues that the evidence was sufficient to establish that D.O. had the intent to commit a criminal offense in the habitation, and it contends that D.O.'s argument is undermined by both *State v. Grier*, 1st Dist. Hamilton No. C-110240, 2012-Ohio-330, and *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995. In *Grier*, the defendant was convicted of burglary in violation of R.C. 2911.12(A)(2) following a bench trial. Grier argued on appeal that the state failed to prove that he intended to commit a criminal offense when he trespassed in the victim's apartment. *Grier* at ¶ 7. This court rejected Grier's argument. We stated that a defendant's intent must be determined from the facts and circumstances of the case, and held that:

> [T]here was testimony supporting a reasonable conclusion that Grier had moved the refrigerator and had knocked over a trash can. At a minimum this demonstrated that Grier had intended to commit—and in fact had committed—"criminal mischief" as defined in R.C. 2909.07(A)(1). The circumstances in this case also give rise to an inference that Grier may have intended to steal something, but was scared off by the apartment's security system before doing so.

6

*Id.*

{¶15} In *Gardner*, the Supreme Court of Ohio considered whether it was necessary for a jury to unanimously agree as to which criminal offense a defendant charged with aggravated burglary intended to commit during the course of the burglary. *Gardner* at ¶ 1. The defendant in *Gardner* was charged with aggravated burglary in violation of R.C. 2911.11(A)(2), requiring the state to prove that the defendant trespassed with purpose to commit in the structure "any criminal offense." *See* R.C. 2911.11(A). The trial court in *Gardner* did not instruct the jury that it needed to agree as to which offense the defendant intended to commit in the home. *Gardner* at ¶ 27. And, while it did instruct the jury as to the separate crime of felonious assault, it did not separately instruct the jury on any specific crime that the defendant had committed to satisfy this element of the offense. *Id.* Gardner argued that the jury instructions deprived him of his due-process right to a unanimous verdict.

{¶16} The *Gardner* court rejected this argument. It held that "a defendant charged with burglary is not deprived of a unanimous verdict simply because the jury was not required to agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building." (Internal quotations omitted.) *Gardner* at ¶ 68. The court further noted that the jury need not in all cases be instructed on the elements of the particular crime the defendant intended to commit, and that "the specific crime or crimes intended to be committed inside burglarized premises is *not* an element of burglary that must be included in the * * * jury instructions * * *." (Emphasis sic.) *Id.* at ¶ 71, quoting *State v. Bergeron,* 105 Wash.2d 1, 16, 711 P.2d 1000 (1985).

{¶17} But the *Gardner* court further indicated that the state must prove beyond a reasonable doubt that the defendant intended to commit "any criminal offense," stating that:

> We do agree, however, that the state must prove the defendant's intent to commit a crime—"any criminal offense"—beyond a reasonable doubt. The breadth of the phrase "any criminal offense" is such that in some cases, it may invite a fatally "patchwork" verdict based on conceptually distinct groupings of crimes or on multiple acts. We believe that in such cases, due process requires that the jurors must be instructed as to the specific criminal act(s) that the defendant intended to commit inside the premises.

*Id.* at ¶ 72. The court ultimately recognized that "it is preferable for the trial judge to instruct the jury in all aggravated-burglary cases as to which criminal offense the defendant is alleged to have intended to commit once inside the premises and the elements of that offense," but it did not go so far as to require such an instruction in every case. *Id.* at ¶ 73-74.

{¶18} Both before and after *Gardner*, the state must prove beyond a reasonable doubt that the defendant intended to commit a criminal offense in the habitation. *Id.* at ¶ 72. And, ultimately, at a minimum, the record must support the intent to commit an identifiable crime. After reviewing the record, we find that the state failed to meet its burden in the case at bar.

{¶19} The evidence presented at trial established that D.O. remained hidden underneath a box in the Borgmans' spare bedroom for approximately 45 minutes after they returned home. The curtains and the bedspread in that room were askew,

8

but none of the Borgmans' belongings were damaged or moved, and nothing was taken from the home. And, as noted by D.O., the state failed to identify at any point during these proceedings any specific criminal offense that D.O. allegedly had the purpose to commit inside the habitation.

{¶20} The state argued in response to D.O.'s Crim.R. 29 motion for an acquittal that:

> The purpose to commit a criminal offense, I think that can be certainly drawn from the circumstances, Your Honor. You have the ability to look at the circumstances as a whole, including the fact that he was hiding in a bedroom for 45 minutes tucked away in a hidden position to not be found by the residents in the home. There were things shuffled about, specifically what Ms. Borgman testified to was the comforter had been tampered with in the residence that day.
>
> Fortunately, they were able to intervene when this happened, so ultimately they don't have any reason to believe that property was ultimately taken from the residence, but the surrounding circumstances certainly show the element of the intent to commit any criminal offense.

{¶21} While the state outlined the circumstances in which D.O. was discovered, it failed to identify any specific criminal offense that he intended to commit. Nor did it identify any such offense at the objections hearing. And despite the fact that D.O. raised a specific objection to the state's failure to establish which crime D.O. had the purpose to commit and to the magistrate's failure to identify a particular crime, the trial court failed to identify what offense or offenses D.O. had

the purpose to commit. It instead generally found that the circumstances of the case supported an inference that D.O. intended to commit a criminal offense. Finally, the state has not argued to us in this appeal what crime it claims D.O. had the intent to commit.

{¶22} In *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205 (2d Dist.), the appellant challenged his burglary conviction under R.C. 2911.12(A)(2) on the ground that there was insufficient evidence to establish that he entered the habitation with the purpose to commit a criminal offense. The state argued that Hudson had trespassed with the purpose to commit possession of illegal drugs, possession of criminal tools, and/or unauthorized use of property. *Id.* at ¶ 21. The court considered each of the identified offenses in light of the evidence presented, and found insufficient evidence that Hudson intended to commit any of the offenses. The court therefore determined that Hudson's conviction for burglary was not supported by sufficient evidence. *Id.* at ¶ 33.

{¶23} Unlike *Hudson*, the state has failed to identify for this court's consideration any specific criminal offense that D.O. had the purpose to commit. And the evidence cited by the state—D.O.'s act of hiding underneath the box and the askew bedspread and curtains—does not establish beyond a reasonable doubt that D.O. intended to commit a criminal offense inside the Borgmans' home. R.C. 2911.12(A)(2) does not allow this court to speculate as to what criminal offense a defendant intended to commit inside the habitation. Rather, that the defendant intended to commit a criminal offense must be proven beyond a reasonable doubt. Here, the facts and circumstances of the case are insufficient to establish that D.O.

had the intent to commit a criminal offense inside the Borgmans' home. *See Grier*, 1st Dist. Hamilton No. C-110240, 2012-Ohio-330, at ¶ 7.

{¶24} We accordingly find that D.O.'s adjudication for burglary was not supported by sufficient evidence.

{¶25} But the evidence adduced at trial was sufficient to support an adjudication for trespass in a habitation when a person is present or likely to be present in violation of R.C. 2911.12(B). D.O. concedes this on appeal. "When the evidence shows that a defendant is not guilty of the crime for which he was convicted, but is guilty of a lesser-included offense, this court may modify the conviction." *State v. Davis*, 1st Dist. Hamilton No. C-040411, 2006-Ohio-4599, ¶ 13; App.R. 12(B); *See Hudson*, 2018-Ohio-423, 106 N.E.3d 205, at ¶ 35.

{¶26} The first assignment of error is sustained. Our resolution of D.O.'s first assignment of error renders his second assignment of error challenging the manifest weight of the evidence moot. *See State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 31.

### *Conclusion*

{¶27} We reverse the trial court's judgment adjudicating D.O. delinquent of burglary in violation of R.C. 2911.12(A)(2), and remand this cause for the trial court to modify its judgment to reflect that D.O. is delinquent for committing trespass in a habitation when a person is present or likely to be present in violation of R.C. 2911.12(B), and for sentencing on that offense.

Judgment accordingly.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

11

Please note:

The court has recorded its own entry on the date of the release of this opinion.